MARVIN, Judge.
In this action, the lower court construed against the succession administratrix a stipulation made in earlier litigation between the administratrix and a judgment creditor. This construction of the stipulation resulted in a judgment which ordered the judgment creditor to be paid by preference and priority over the legal fees of the administratrix and her counsel. On her appeal of this judgment, we reverse and remand.
The succession property was encumbered with mortgages and judgments totaling approximately $35,000. About 2V2 years after the succession was opened, new counsel employed by the administratrix negotiated with the creditors holding encumbrances to accept less than the face amount of their encumbrances. Court approval was then sought for a private sale of the succession property in separate tracts to three individuals for $24,000, an amount which was thought to be sufficient to satisfy and cancel the encumbrances and to allow the six heirs of the decedent to receive a few hundred dollars cash upon closing of the estate.
J. Earl Alexander, a relative and former business partner of the decedent, purchased from a judgment creditor a 1968 judgment against the decedent in the principal amount of $11,500. Alexander then filed formal opposition to the proposed private sale of the succession property on the grounds that the property would bring *987 more at a public sale to satisfy creditors. At a hearing on this issue in August, 1976, the stipulation in question was made. We construe the stipulation to be an “agreement” in conformity with the lower court rule no. 16 (Second Judicial District Court, L.S.A. Court Rules) which reads: “. . . all agreements relating to. causes in Court, must be in writing, unless made in Open Court and entered at the same time.”
The petition for private sale originally alleged offered prices for the several tracts of succession property which would total $24,000. During the 1976 hearing, some of the persons offering to purchase the tracts raised their offers so that the total offered amount would be $28,500. Apparently an error in arithmetic led the litigants and the court to believe that the increased offers would total approximately $31,000. After the increased offers were considered, this stipulation was entered during a noon recess at the 1976 hearing:
ADMINISTRATRIX’S COUNSEL: “. . .at this time by stipulation of counsel, let the record reflect that the prospective purchasers if called to testify would testify that they would agree to pay the price of approximately $31,000.00 or the equivalent of the amount of judgments as negotiated by counsel on their behalf, in addition to the face value of opponent’s, Mr. Alexander’s, judgment which he purchased that they would be willing to pay that price for the property in question for their respective interests.
THE COURT: “Do you join that stipulation?
OPPONENT’S COUNSEL: “Yes, sir, we would join in that stipulation. And, in view of that particular stipulation, at this time we would withdraw the opposition filed by J. Earl Alexander to the private sale under the terms of that stipulation, Your Honor.
THE COURT: “Let the stipulation be made a part of the record.
ADMINISTRATRIX’S COUNSEL: “We will amend the pleadings, Your Honor, and serve the public notice upon the proper parties and have the proper notices published . . . ” Emphasis Supplied.
• After amended pleadings and advertisement, and without further opposition, the private sale as proposed, was authorized and consummated. The amended pleadings expressly recited that the total price to be received was $28,500. It was discovered afterward that this amount would not be sufficient to pay (1) the amount negotiated with creditors other than J. Earl Alexander, (2) the face amount of the judgment purchased by Alexander, and (3) the legal charges of the Administratrix and the succession counsel. J. Earl Alexander then brought suit in January, 1977, against the purchasers and the administratrix seeking to be paid the full amount of his judgment or alternatively, to set aside and nullify the consummated sales. The district judge who presided at the 1976 hearing when the stipulation was entered had retired and did not preside at the 1977 trial. A transcript of the 1976 hearing was introduced at the 1977 trial at which another judge of the district presided.
We construe the agreement in accord with the principles set forth in our Civil Code and cases interpreting its articles. In this respect, we are not allowed to rewrite or reform the agreement if it does not explicitly or implicitly resolve in detail all of the conflicts between its parties.
In written reasons for judgment, the lower court emphasized testimony by the ad-ministratrix that it was her desire that the property be sold at private sale to the three prospective purchasers even if someone else would offer $30,000-$35,000 for the property. The lower court then concluded upon particular consideration of the 1976 stipulation, that the administratrix, through her attorney, was agreeing that Alexander’s judgment would be paid by preference over any fees which might be due her and her attorneys, and that this judgment would be paid in full.
We cannot agree that this was what the administratrix and her attorney stipulated and agreed. The stipulation is clear and express. It says that if the persons offering to purchase at private sale were called *988 as witnesses in the hearing, they would testify that they would be willing to pay approximately $31,000 for the property. The effect of the agreement was to allow the property to be readvertised for private sale, without opposition by the former opponent Alexander, if the offerors raised their total offer from the original offer of $24,-000. We conclude that the opponent in effect was saying that he would be willing to bid at a public sale something more than the private sale offerors originally proposed but not more than what they were later proposing, and that he would make no opposition to a private sale at the increased price. If the opponent concluded that he was being guaranteed by the agreement that he would be paid in preference over the privileged estate charges, his conclusion, however sincere, was erroneous. The stipulated agreement does not read to that effect. Any other agreement was not “entered” in accord with the lower court rules. Had the property sold at public succession sale, even for $35,000, the question of the amount and the ranking of legal charges against the succession would not have been resolved simply by the sale being consummated. C.C.P. Art. 3303. At the time the stipulation was entered, no tableaux had been proposed or submitted and the question of the amount and ranking of all charges, secured and unsecured, privileged and unprivileged, against the succession, had not been submitted for adjudication.
The judgment against the succession which was purchased by plaintiff is but one of several against the succession. All encumbrances, privileges and charges against the succession will have to be ranked and accordingly paid as the law provides. C.C.P. Art. 3303. The judgment of the lower court holding that the stipulation in question gives preference and priority to plaintiffs judgment over the legal charges which may be approved against the succession is reversed. Any modification of the terms of any obligation owed by the succession must be approved by the court. C.C.P. Art. 3198. We remand so that the succession proceedings may be concluded as the law directs.
At appellee’s cost, reversed and remanded.